Good morning. May it please the court, I am Attorney Anne Thomas-Saltom representing Jacqueline Pilot and she appears with me at council table. I would like to preface my remarks this morning before discussing the technical legal issues directly pertaining to pretext and the evidence needed to establish a prima facie case for age discrimination. I would like to provide you with some context of why we are here some five years after Ms. Pilot applied for a position. In 1977, I got my pilot's license. In 1986, Ms. Pilot began working as an air traffic controller. And although our perspectives are different, we both know well that there are no second chances when there is a mid-air collision. Every day that Mr. Pitts was serving as the air traffic manager, the number one safety position at every airport in the United States, people were in danger. Ms. Pilot, the record is undisputed, was qualified, had served in the air traffic controller capacity, receiving exceeds job performance reviews for two years. She had decades of experience on the side of the FAA business where the planes fly. She was well-known, well-respected, and well-liked. She had complained about Mr. Needham in late 2017, early 2018, and the first opportunity he got to respond to her successful employment discrimination complaint about him was when she applied for the permanent air traffic manager position in Kansas City. So she had complained about him. What allegations or what report had been made with respect to Needham and its connection to the facts of this case? The initial complaint that Ms. Pilot had filed against Mr. Needham was in late 2017, 2018. He was aware of that complaint when he inserted himself into the permanent air traffic manager position when she applied in 2020. Was there something in the nature of that complaint that would have caused there to be animus between him and her? Yes. She was successful in pursuing that EEO complaint, and he was not happy with the result of that. The first opportunity for him to show his displeasure was when she applied for the permanent air traffic manager position in 2020. She began serving in the air traffic manager position in an acting capacity in 2018, and she served in that capacity until 2020, always receiving an exceeds performance rating. So there never was an opportunity for anyone to question her competence. What was it about the process here that suggests pretext? Because I think the record indicates that this had been used in Kansas City, or a similar process. It may be different in other parts of the country, but that this is basically the way Kansas City was doing their hiring, and they had been doing it this way for some time. Which, if that's true, makes your showing a pretext more difficult, I think. Yes, and thank you. And that is the key. That is the key. And let me tell you why it is the key. Everybody, including the four rule 36B6 witnesses that I depose, everybody said that no one, for the air traffic manager position, because it's the number one safety position at every airport across the country, no one can depart from the merit systems principles format. Nobody can depart from it. Even Mr. Gillespie so said during his deposition. But they did depart from it. The merit principles systems approach requires that you look at objective criteria, and that you weight various criteria, 20, 20, 20. You can modify those weights some, but you can't weight anything 60%. And you can't have a 90% subjective process. Had Kansas City been using this? They had not. That was a lie. So is it the rigging the process that's the showing a pretext? Because then they brought in folks to make judgments under the process, right? Who, as I understand, have no connection to kind of the allegations in your complaint. Correct. And that too is the key. So if I could, that under the process that they had to use, under the customs, policies, process, procedures, and written directives, they had to use the merit-based approach, which prohibits using a 90% subjective. There is no evidence anywhere in this entire record that authorizes using a 90% subjective system. So then you say, as Judge Kolb, you've identified, weren't they using it in Kansas City? And the answer to that is no. That is a lie. And we know it's a lie because Mr. Needham and Mr. Gillespie said they had used it. Nobody else had used it. They said they had used it. But they had only been in those jobs for one year. There's no way it could have been used by them in Kansas City for 10 years. They hadn't been in those jobs for a full year. So we know it's a lie. That is the sole basis for them saying they're authorized not to use the system. Had they used it in prior applications before? There's no evidence in the record it had ever been used anywhere in the nation by anybody except in this case. The only statement made, the only evidence is a self-serving statement made by Mr. Gillespie. Not even Mr. Needham said they had used it for 10 years. They hadn't been there for 10 years. Nobody else was using it. And everybody else, including the number two guy for human resources in California, including a fellow we use, Quentin Miles in California, everybody said they had never, ever used it. Including one of their 30B6 witnesses out of Indiana who had selected 12 ATMs, air traffic managers, he said he never heard of using that kind of system. So no, they simply lied. There's no evidence in the record it had ever been used. More importantly, I would ask the court to turn its attention. So counsel, would you say that the district court weighed the evidence and resolved that issue as to the origin of, or the credibility of the statement that this was what was done in Kansas City? Yes, he did. And I believe that that's an error. You know, either we believe that, you know, the Rule 56 summary judgment rules should be followed or not. And I know that in the Eighth Circuit, there seems to be a preference for pretext plus versus pretext only. I understand the tension and the differences. But I don't think that outside the self-serving statement of one of the people whose actions we're questioning, that you can simply say, okay, I'm going to weigh that and I'm going to accept that as true. And I see a three-person panel, so they had to be insulated. And I want to address the insulation issue, and I ask the court to please look at pages 291 and 292 of the appendix. When looking at this, you will see that for Ms. Pilot, she should have received for her MS1 points, this is on the objective point, not only did they jam her on the subjective point, they jammed her on the objective points. But I'm going to stay with the objective because I think it's always measurable. And it's easier for us to understand how we measure against the merit system principles. So when looking at page 291, she was supposed to get 8 points for her MSS1 experience. She was supposed to get 12 points for her MSS2 experience. She was supposed to get 18 points for her MSS3 experience. And she was supposed to get 24 points for her MSS4 experience. That's the objective stuff. Instead, they gave her 3 points, 4 points, 18 points, and 12 points. So they gave her a total of 49 points when she should have gotten a total of 62 points. The closest person to her was not Mr. Pitts. Mr. Pitts got a total of 30 points. So she should have gotten, although they gave her 49 points and gave him 30, she should have gotten 62 points. When I took the deposition of Mr. Galeski, Mr. Galeski said, well, she got 84 points. I said, Mr. Galeski, whether I'm talking about 49 points, whether I'm talking about 62 points, whether I'm talking about this new 84 points, how in the world at page 292 of the appendix does that translate into a package review of 9.03 points? In addition to my law degree, I hold a Ph.D. degree. Among the things I have done with that is taught university-level graduate students research methods and statistics. I know of no mathematical or statistical formula that allows me to get close to a 9.03 package review score if I have 49, 62, or 84 points. So they played with the points. What did the district court say about this issue? I don't know if the district court, the district court I think believed that the three-person panel provided some insulation to the decision. But what the district court didn't realize, and what I want this court to understand, is that the process was corrupted by Mr. Galeski and Mr. Needham. There also was no reason for Mr. Needham to be even involved in this process. While he was involved in this process, the record is silent. Mr. Galeski was the one who was appointed as the selecting official. But what they did is from the very beginning is they corrupted this process and as a result they ended up putting in a man who was completely unqualified. They forced Ms. Pilot to train him for six months. And when she got tired of holding his hand and got another job working with the Department of Transportation he didn't even last another six months. He had people placed in danger. He didn't know what he was doing. And they should have allowed her to be hired. And the reason they didn't hire her is because she was an older black woman who had the audacity to complain about employment discrimination that Mr. Needham had engaged in previously. May I reserve the last minute of my time? Certainly you may. Thank you. Unless there are questions. Any questions? I see none. Mr. Ray? Good morning, Your Honors. May it please the Court. My name is Jeff Ray. I'm with the United States Attorney's Office in the Western District of Missouri and I appear today on behalf of Sean Duffy, the Secretary of Transportation, to ask that you affirm the judgment in or below by the District Court, the Honorable Gary Finner. Thirty-four years ago, in Broussard Norcross v. Augustana College Association, this Court, in reviewing a promotion decision, first used the term that it does not sit as a super-personnel council to review employment decisions. Since then, that Court has used the phrase, we do not sit as a super-personnel department at least a hundred times. And today I invoke that language again. As Ms. Sultan has argued quite vigorously. Counsel, you would acknowledge that that language doesn't insulate anyone from liability for discrimination? Absolutely not. The anti-discrimination laws and anti-retaliation laws are in place and it's the job of this Court to enforce it. And an employer, whether it be a government agency or a private employer, cannot come in and say, you cannot look at our process. Well, would you help us with what the record has about the process that was used here and the substantially subjective methodology that was used? I take some issue with the characterization of substantial subjectivity. As I've looked at it, it seems undisputed that you've got 60% plus another 30% elements that are largely subjective. The interview, review, and then other features that largely turn on the view of the reviewer. But as this Court noted in its en banc decision in Torgerson, removal of all subjectivity from No, that's obvious. There's no way to remove all subjectivity. And what was done in this case and had been done by the FAA for nearly a decade was to take those parts of the process that do involve subjectivity, i.e. interviews, and do the best they can to make them objectively comparable as to candidate to candidate. So for over a decade, counsel on the opposing side suggests that that is not the case. What did the district court find and what was the basis of that finding? There was specific testimony from Mr. Galeski that this particular process had been used by I won't get into the description, but basically high-level management jobs. And what in the record other than his testimony supports that? Well, and then in response to that in their summary judgment motion, what Ms. Pilot said was there is no evidence of what Ms. Pilot currently is aware showing that this same selection process was used before or since 2020. In other words, she didn't refute what Mr. Galeski said. Instead, she said that she had no evidence that in fact that was true. Mr. Galeski's testimony was under oath and was not refuted and the district court accepted that as a fact. More to the point, we believe that there is nothing inherently improper. I have heard both today as well as in the district court about violations of merit system principles. I would direct the court to pages 379 to 380 of the appendix, which includes this statute which lays out merit system principles, of which there's nine. These are merely general obligations that a federal employer has to do stuff like be sure that all employees should maintain high standards of integrity, conduct, and concern for the public interest. The workforce should be used efficiently and effectively. In other words, there's nothing about these, and I have still not heard in any argument or seen anything in the record as to how this process violated any of these overriding principles. So the district court found here, I'm looking at page 12 of its order, the selection process for permanent ATM position did not meet the merit system criteria for performance evaluations. Is that different than, and then later on in that same paragraph, the district court says the selection process was in fact compliant with the FAA's merit system. What is the distinction there? Is it between performance reviews and hiring decisions? I believe there's a typo in the district court there because if you read that entire paragraph, the first sentence does not seem to jibe at the rest of it. What the court said, while the selection process for the permanent ATM position did not meet the merit system criteria for performance evaluation, plaintiff points to no FAA merit policy governing the selection and or promotion of employees to fill a vacant position. The evidence suggests the selection process used to select pits for the permanent ATM position was in fact compliant with the FAA's merit system. So I don't know what to make of that. I think if you look at the very next paragraph in the first sentence, I think that's an indication that the court did not find that there was a violation of the merit principles because that next paragraph starts out, even if the selection process deviated in some way from merit principles, plaintiffs must still show that discriminatory or retaliatory animus underlies Gillespie and Needham's decision to employ such a process. So I think what the district court said was that there was not a violation, but even if there was, that that in and of itself is not evidence of discriminatory or retaliatory animus. I agree that the sentence itself is somewhat confusing on the prior paragraph, but to me if you read that entire paragraph, it seems clear to me the district court did not find ultimately that this process violated any merit principle, and if the court did find that, they never identified which of these nine broad overarching principles of federal employment were violated by this process. To return to Judge Smith's original question regarding subjectivity, there was subjectivity with respect to 90% of this interview process. However, in line with what this court had said in Torgeson, the FAA went to great lengths to try to resolve whatever imbalances might be natural in a subjective evaluation of applicants. The six questions asked of the managers and the six questions asked of the applicants were all the same. They were all drawn from questions that had been previously approved by HR and legal at FAA. With respect to the applicants, they were all given the questions 30 minutes before their interview. They were all told that only follow-ups could be, or the interviewers were told that only follow-up questions could be to seek clarification, and all the interviews had to be completed within 45 minutes to prevent an excessive talker, I suppose, from having an unfair advantage. I'm not saying that that doesn't remove all subjectivity from the process, but unless the FAA is going to make this decision based on a multiple choice examination, subjectivity will be part of it. Whether or not that's 90% of the final score, or 30% of the final score, or 5% of the final score, ultimately is a decision for the FAA to make within its own business judgment. To do otherwise, and for it to say otherwise, and to manipulate the numbers so that Ms. Pilot was the selectee, does involve this court and any federal court sitting as a super-personnel body and micromanaging the selection process for the FAA. And the reason that's the case is because, other than the fact that this process did not lead to Ms. Pilot being the selectee, and her belief that that can only be the case if there was discrimination, there is no other evidence that this process itself was discriminatory, was intended to be discriminatory, or was any way objectively to be viewed as something that was likely to lead to a discriminatory result. Well, counsel makes the point that there was some prior friction between the plaintiff and Needham. In late 2017, there was an EEO complaint filed, and I apologize, I know you asked what the nature of it was, I don't recall now, but I do know that Mr. Needham was one of the alleged discriminating officials. It was found favorably in favor of Ms. Pilot. And Ms. Sutton, with all due respect, says Mr. Needham's first opportunity to get back at her was when he passed her over for the permanent ATM position. I do take issue with that. His first opportunity would have been not to have appointed her as acting ATM. In this case, she was appointed acting ATM, and I want to be clear, I don't want the record to be anything other than this. She did a good job as acting ATM, and she was highly qualified for this position. The fact is that this process, utilized by the FAA, identified four individuals who were highly qualified. And I'm not going to get into defending Mr. Pitts, except to say that the allegations made here today in this oral argument are not supported by the record. There is no evidence in this record that Mr. Pitts was a problem with safety. There is no evidence that he created safety issues. It is true that after serving in this position for a period of time, he wished to return to Dallas, I believe, somewhere in Texas where he'd been before, where his family was from. And he did transfer. But I reject the notion that he was a safety concern, and I would point out there is nothing in the record that would support such a finding by this court on that issue. With respect to qualifications, again, I won't belabor it, but Ms. Pilot clearly was qualified. But with all due respect, so were Mr. Pitts, as well as the other two candidates who finished with a higher score than Ms. Pilot in the final evaluation. This court has said many times that as long as candidates are similarly qualified, it is not the job of the court to weigh in and make a determination as to who, in fact, was the most qualified. Again, to do so would ultimately result in the court micromanaging the decision-making process of, in this case, the federal agency, and being involved in a way that I don't think this court or any court would relish. Finally, I would say, with respect to this process and the qualifications, again, this is not even a case where Ms. Pilot and Mr. Pitts finished first and second. There were four candidates here. Ms. Pilot finished fourth. I know there's been some discussion here trying to address the math. I would note Mr. Gillespie explained the math in his deposition, and it has to do with the fact that they wanted the 10% of the resume, those points, to be similar to the points that were being assessed with respect to the interview and the manager's interview. Therefore, they took the total points and reduced them percentage-wise so that they were equitable with the other elements. They were weighted in a way that was appropriate to come up with a total number. I did not teach statistics. I took statistics, and it was one of the worst nightmares in my life, but I am perfectly confident that the math was done right, and even if it was not done right, even if an egregious mistake was made on the math, as this court has said many times, honest mistakes are not discrimination. Discrimination is intent, and in this case there is simply no evidence of intent. Counsel, just a question. On the age front, is the difference in age here sufficient to go further on the age discrimination aspect, or is there something about the age cutoffs or mandatory retirement age with the FAA that we don't even need to think about that kind of issue, which our case has talked about? There's nothing unique to the FAA that I'm aware of. Our entire argument with respect to age was the four-year difference here is not significant enough to trigger an inference of age discrimination. We believe that's consistent with this court's prior findings, including findings that a difference of five years is not sufficient. But ultimately, even if the court were to find that that prior precedent needs to be rethought, and that the gap here is sufficient, ultimately it still would come down to a question of pretext, and we do not believe Ms. Pilot's evidence established pretext. Ms. Pilot is not the first, nor will she be the last, disappointed job applicant to subjectively believe she was the most qualified applicant, or subjectively believe that any selection process that did not result in her selection must be unfair or discriminatory. But the law requires more than subjective beliefs, no matter how honestly felt. Indeed, absent more evidence than the federal courts would indeed have nothing left to do but sit as a super personnel board and micromanage employment decisions. On behalf of the Secretary of Transportation, I respectfully request that you affirm the decision of the district court. Thank you. Thank you, Mr. Wray. Ms. Salton? Yes, thank you, Your Honor. In Hild v. City of Everleft 777-F-3998 at 1006-08, a circuit 2015, this court held that there is a genuine issue of fact for a jury when evidence of the employer's altered employee's scores. In this case, we have that. Mr. Cairo, one of the employer's Rule 30b-6 witnesses, having participated in selecting a dozen air traffic managers, said he had never used nor heard of anyone anywhere in the country using the scheme that was used in this case. You'll find that at the appendix pages 243 to 244. And finally, to address the point the courts have consistently held, starting with Texas Department, the Birding case at 450 U.S. 248, specifically at 249 and 1981 decision, that when an employer claims a decision for a reason that does not seem to make sense, the fact finder may infer that the employer's assertive reason for its action is a pretext for unlawful discrimination. That is also echoed in the Reeves v. Sanderson at 2000 case and echoed again in Young v. UPS at 575 U.S. 206 at 233. In this particular case, we believe that because the employer's explanation, the sole basis for the employer's explanation was that it had been used, there's nothing in the record other than a self-serving statement that it had been used, that this is a matter that should be presented to the jury. There's sufficient pretext information in the file, in the record of this case, that we believe the district court erred in granting matter as a judgment of law, and we request that the case be remanded for trial. Thank you. Thank you, Ms. Sultan. Thank you also, Mr. Ray. The court appreciates counsel's participation in argument before the court. We'll continue to study the matter and render decision in due course. Thank you. Counsel may be excused.